FRANK A. RAGONE, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ragone v. Commissioner
Docket No. 15076-81.
United States Tax Court
T.C. Memo 1984-538; 1984 Tax Ct. Memo LEXIS 139; 48 T.C.M. (CCH) 1340; T.C.M. (RIA) 84538; October 4, 1984. Dwight A. Miller, for the petitioner. Frank R. DeSantis, for the respondent. HAMBLEN MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
sec. 6653(b) [1]
1973
$21,522.37
$10,761.19
1974
$13,074.70
$6,537.35
1975
$24,793.70
$12,396.85 The issues for decision are: (1) whether petitioner had unreported income for the years in issue in the amounts determined by respondent using the net worth plus personal expenditures method of income reconstruction, (2) whether any part of the underpayment of taxes for any of the years in issue was due to fraud under section 6653(b); and, (3) whether the statute of limitations bars the assessment and collection of any deficiency for the years in issue. *141 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Parma, Ohio, when he filed his petition in this case. Petitioner is a restaurant owner. He opened pizza restaurants in 1956 and 1961. In 1964 petitioner opened a third restaurant, which was later incorporated as Cici's Italian Restaurant, Inc. ("Cici's"). Respondent conducted an audit of petitioner's Federal income tax returns for the years 1960 through 1963, which resulted in a deficiency for each year. The examination was performed using the net worth method of reconstructing income. In 1967, petitioner sold his two pizza restaurants to Clara Salutric ("Salutric"), for $30,000.00. The agreement called for a $10,000.00 downpayment, which petitioner used in partial payment of his tax liabilities for the years 1960 through 1963. During the negotiations for the purchase of the pizza restaurants, petitioner informed Salutric that he was selling in order to pay his tax liabilities. Petitioner incurred a passbook loan to pay the balance of his tax liabilities. Petitioner *142 married Patricia Ragone ("Patricia") in 1965, and filed joint returns for the years 1968 through 1972.They entered into a separation agreement in 1972, which makes no mention of any cash maintained by petitioner. In 1965, petitioner reported a robbery to the police, claiming cash was stolen from his apartment. However, the robbery actually occurred at one of petitioner's restaurants. Petitioner reported the theft in this manner in order to collect from his insurance company. Petitioner was the sole owner of Cici's. For the years in issue, the books and records of Cici's, as well as its corporate income tax returns, were prepared by the accounting department of the law firm of Cozza, Steuer and Stavole. These records and returns were prepared from information and documentation provided by petitioner.The firm also prepared petitioner's personal income tax returns for the years 1973, 1974 and 1975, as well as an amended return for 1975. Petitioner provided all information used in preparing these returns. Petitioner did not maintain a personal checking account, and paid many of his personal expenses from Cici's checking account. In addition, petitioner withdrew funds from the *143 corporation for his personal use.These amounts were recorded in the corporate books under a general ledger account titled "loan payable -- Frank Ragone." Petitioner was primarily responsible for collecting receipts from Cici's, and making deposits to the corporate bank account. Petitioner did not maintain pesonal books and records of the amounts he withdrew from the corporation. In 1974, petitioner incorporated a nightclub, the Bachelors II, Lounge, Inc. ("Bachelors"). In September 1974, petitioner sold a 49 percent interest in Bachelors to John Nemi. ("Nemi"). The purchase price was $35,900.00. The contract states that "successful consummation" of the agreement is contingent on Nemi's approval in late 1975. The sales contract called for monthly payments of $501.00 per month which included 8 percent interest on the principal. Nemi made such payments in 1974 and 1975. Petitioner's 1974 and 1975 returns did not include any interest income from the sale of Bachelors. Petitioner purchased stock in Horizon's Research in 1972 and 1973. Petitioner disposed of a portion of this stock in 1975. Petitioner's 1975 return did not reflect his gains, losses or dividends relating *144 to his Horizon's Research stock. During the years 1973 through 1975, petitioner traveled to Las Vegas at least twice a year on gambling junkets. Petitioner was extended a line of credit at the Aladdin Hotel and Casino. Petitioner borrowed against this line of credit in order to gamble. Petitioner repaid these loans by cash or by cashier's check in 1973, 1974 and 1975 in the amounts of $3,000.00, $2,000.00 and $2,700.00 respectively. Petitioner did have winnings on some of his visits to Las Vegas. Petitioner's returns for the years in issue did not include income from gambling. Petitioner was a partner in the partnership known as Cleveland-Denver Land Company. His capital account in the partnership as of December 31, 1972, 1973, 1974, and 1975 was $3,561.51, $1,841.60, $1,389.24 and $1,566.30, respectively. In 1975, respondent began a criminal investigation of petitioner's returns, which was extended to cover all the years in issue. Respondent's special agent was not permitted to meet with or interview the petitioner at any time during the investigation. Although requested by the special agent, petitioner did not submit for examination his personal books and *145 records for the years in issue. Respondent determined petitioner's adjusted gross income for the taxable years 1973, 1974, and 1975 by the net worth and personal expenditures method. During respondent's examination, the special agent investigated the possibility that petitioner had cash on hand as of December 31, 1972. At no time during the course of the examination was the existence of a cash hoard raised by petitioner's representatives, or by anyone else interviewed, including petitioner's ex-wife Patricia, his former roommate, close friends, relatives and business associates. In 1971, petitioner purchased a home for his parents. The loan application submitted by petitioner, which does not list all his assets, states that petitioner's only cash on hand consisted of a $10,000.00 gift from his father, which was used as part of the downpayment on the house. At the conclusion of the investigation, respondent's special agent sent petitioner a letter advising him to present any defenses he might have to a criminal prosecution. At a meeting held pursuant to this letter, petitioner's representatives did not raise the issue of a cash hoard. Petitioner was indicted for *146 criminal tax evasion for the years 1973 through 1975 under section 7201. Petitioner was found not guilty by the District Court for the Northern District of Ohio because the District Court found the government's entire case to be based on petitioner's loan application form. OPINION Respondent determined deficiencies in petitioner's income taxes for the years 1973 through 1975 using the net worth/personal expenditures method of income reconstruction.Respondent also determined that petitioner was liable for the addition to tax for fraud under section 6653(b) for those years. As a general rule, the burden of proof with respect to deficiencies is on petitioners, ; Rule 142(a), and the burden is on respondent to prove fraud by clear and convincing evidence. Sec. 7454(a), Rule 142(b). In this case, however, assessment of the deficiencies is barred by the 3-year statute of limitations under section 6501(a)(1) unless the respondent demonstrates that an exception to the usual 3-year statute of limitations is applicable. Thus, respondent must establish, by clear and convincing evidence, that the return for each of *147 the years at issue was "false or fraudulent", sec. 6501(c)(1), or, by a preponderance of the evidence, that omitted income for the years in issue exceeded 25 percent of the reported gross income. Sec. 6501(e)(1)(A); , affg. in part and revg. and remanding a Memorandum Opinion of this Court; . As a practical matter, therefore, in the circumstances of this case, the burden of going forward with evidence lies initially with respondent. In this case, the determination of unreported income as well as the existence of fraud necessary to lift the bar of the statute of limitations depends in major part upon respondent's net worth/personal expenditures computation. We must, therefore, examine the validity of respondent's computation in light of the standards set forth by the Supreme Court in and .Under those standards, respondent must first establish, with reasonable certainty, an opening net worth. Second, he must *148 establish the annual increases in net worth. Finally, he must show that the increases were derived from taxable sources of income. Respondent can meet this last requirement by establishing a likely source of unreported taxable income or by negating the existence of nontaxable sources of income by a reasonable investigation of leads furnished by petitioner. For the reasons stated below, we conclude that (1) respondent's net worth computation complies with the Holland and Massei standards; (2) respondent has proved, by clear and convincing evidence, that petitioner's underpayment of his taxes for 1973 through 1975 was fraudulent; and (3) the statute of limitations does not bar the assessment or collection of the deficiencies in the instant case. A. Net Worth
Most of the items in respondent's net worth computation have been stipulated by the parties. The parties disagree, however, with respect to certain items which we shall discuss in turn. 1. Loans Payable Account
One of the assets attributed to petitioner for each of the years in issue is the appropriate year-end total from Cici's loan payable account reflecting amounts expended for petitioner's personal *149 expenses and amounts withdrawn or deposited by petitioner from Cici's accounts. The year-end totals for the loan payable account used by respondent in the net worth computation are fully supported by the evidence in the record. Respondent's agent testified at trial with respect to the loan payable account, and the figures used in the computation are based on source documents in the record. Petitioner offered no documentary evidence to refute respondent's figures. Petitioner argued that the entries to the loan payable account did not represent cash petitioner actually paid to or received from the business. However, no evidence was presented which supported this assertion. [2] We conclude that respondent correctly computed the loan payable amounts included in petitioner's net worth. 2. Cleveland-Denver Land Company
Respondent determined that petitioner's net worth for each *150 of the years in issue included the amounts in his capital account of this partnership. The capital account amounts are fully supported by the documentary evidence submitted by respondent. Petitioner presented no evidence on this issue. Accordingly, we sustain respondent's determination and inclusion of the capital account amounts in each of the years in issue. 3. Automobiles
Respondent determined petitioner owned various cars during the years in issue, and supported these assertions with voluminous documentation. Petitioner did not stipulate to respondent's determination, and presented the Court with no evidence to contradict either the ownership by petitioner or the value of the cars determined by respondent. Thus, we sustain the figures determined by respondent. 4. Sale to John Nemi
Respondent determined that petitioner had outstanding notes receivable from Nemi in 1974 and 1975, in the amounts of $14,133.32 and $10,158.29, respectively.Additionally, respondent determined petitioner had a contingent liability to Nemi in 1974 of $35,900.00. Respondent based these figures upon the agreed contingent sales price in petitioner's contract with Nemi, and *151 upon Nemi's payments in 1974 and 1975 of $501.00 per month in principal plus interest. Petitioner argues that because the contract contained the contingency relating to Nemi's approval by the State of Ohio, all of Nemi's payments were principal payments, with no interest element.Petitioner asserts that he therefore had no interest income in 1974 or 1975, and that respondent's determination of the amounts of the outstanding notes receivable from Nemi are incorrect. We disagree. The contract clearly computes the monthly payment of $501.00 per month to include interest at 8 percent. The contingent nature of the contract is reflected and acknowledged by respondent's inclusion of the $35,900.00 as a contingent liability of petitioner's in 1974.Thus, we sustain the figures determined by respondent. 5. Gambling Markers
Respondent determined petitioner's personal living expenses included payment of gambling markers in the years 1973, 1974 and 1975. These payments are fully supported by documentary evidence submitted by respondent. Petitioner disputes the inclusion of these payments in his personal living expenses. Petitioner does not dispute that such payments *152 were made. He argues, however, that he incurred no actual losses in these amounts, and merely created these losses on paper to insure that the casino would invite him back on complimentary trips. Petitioner offered no evidence to support these claims other than his uncorroborated and self-serving testimony. We find petitioner's story unconvincing and absurd. Therefore, we sustain respondent's inclusion of the payments in petitioner's personal living expenses. 6. Cash Hoard
Respondent determined that as of December 31, 1972, petitioner had cash on hand in the amount of $400.00. Respondent determined that as of December 31 in 1973, 1974 and 1975, petitioner had cash on hand in the amount of $400.00, $20,850.00 and $700.44, respectively. Petitioner disputes these figures, claiming that he maintained a large cash hoard. He claims that this hoard amounted to $70,000.00 in December of 1972. Petitioner offered only his uncorroborated, self-serving testimony in support of this contention. Respondent's agenttestified at trial that he extensively investigated petitioner, interviewing his ex-wife, roommate, friends, parents, relatives, and business associates, none *153 of whom were aware of the existence of any cash hoard. Significantly, petitioner's representatives did not raise the issue of a cash hoard when confronted with the possibility of criminal prosecution. We find petitioner's claim incredible. See . His testimony as to the source and amounts of his claimed hoard was vague, contradictory and unconvincing. Petitioner's financial difficulties were so acute in 1967 that he was forced to sell his two pizza restaurants and take out a loan to satisfy his tax liabilities. We find no support in the record for petitioner's claim that by 1972 he had $70,000.00 accumulated in cash. It is within the province of this Court to determine the extent to which the testimony of petitioner is believable. [3], cert. denied , affg. . Petitioner's story is unbelievable, and we reject his testimony.
In sum, we conclude that respondent has shown in a clear and convincing fashion *154 that his net worth computation should be sustained. Respondent established an opening net worth for petitioner. He established annual increases in net worth. Finally, respondent showed that the increases were derived from taxable sources of income by establishing petitioner's restaurant, gambling, andinterestpayments from Nemi as likely sources of unreported taxable income. Thus, respondent has met the standards found in Holland and Massei.
B. Addition to Tax
The next issue for decision is whether respondent's determination of fraud should be sustained. We find that the evidence provided by respondent shows that petitioner fraudulently evaded tax in the years at issue. Section 6653(b) provides for an addition to tax of 50 percent of the underpayment if any part of the underpayment is due to fraud. Respondent has the burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. , affd. without published *155 opinion, . To establish fraud, respondent must show that the taxpayer filed his return with the specific intent to evade tax believed to be owing. . The consistent understatement of substantial amounts of income over several years is strong evidence of fraud. ; . Conduct calculated to mislead or conceal is indicative of fraud ( ; ); and the failure to keep adequate records is indicative of an attempt to defraud. . In the instant case, there are numerous indicia of fraud, Petitioner maintained no personal books and records of his various business transactions and cash withdrawals from his corporation. The corporate records were inadequate to correctly reflect petitioner's income. Petitioner was solely responsible for providing all of the information *156 necessary for maintaining complete and accurate records for the preparation of his returns. Petitioner consistently and intentionally understated his income. He persistently omitted large amounts of taxable income from his returns. Additional evidence of fraud is found in petitioner's failure to report portions of his interest income and all of his admitted income from gambling. Finally, we find that petitioner lacks credibility. By his own admission, he filed a false police report in an apparent attempt to defraud his insurance company. Moreover, petitioner presented this Court with an incredible tale. His testimony was contradictory, contrived and unbelievable. On the basis of our consideration, we find that respondent has clearly and convincingly demonstrated fraud for the years in issue for purposes of section 6653(b). The imposition of the additions to tax for fraud in this case are incumbent and appropriate. We have considered petitioner's other arguments and find them unpersuasive. [4]
*157 C. Statute of Limitations
Finally, we must consider whether the statute of limitations bars the assessment or collection of any deficiency for the taxable years in issue. Section 6501(a) provides a three-year statute of limitations. However, under section 6501(c)(1) when a return is false and fraudulent, the statute of limitations does not bar the assessment or collection of the deficiency at any time. In the instant case, we have found petitioner's returns to be fraudulent. Thus, the statute of limitations does not bar the assessment or collection of the deficiency for the years 1973, 1974 and 1975. Based on the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner attempted to show he did not pay in or receive the cash through the testimony of Ann Spence ("Spence"), the accounting department supervisor for some of the years in issue. However, Spence had no actual knowledge of petitioner's cash advances or withdrawals from Cici's.↩
3. See .↩
4. Among other arguments, we have specifically considered and rejected petitioner's attack on respondent's cash flow analysis, which was irrelevant to the net worth computation, and petitioner's assertion that respondent should be estopped from employing the net worth method of proof based on the criminal trial. See , affg. . Respondent's case here is clearly based on more than petitioner's loan application.↩